683 A.2d 677

**Steven A. FUSCO and Joyce M. Fusco**

v.

**HILL FINANCIAL SAVINGS ASSOCIATION.**

**Appeal of STATE STREET BANK AND TRUST COMPANY.**

Superior Court of Pennsylvania.

Argued May 21, 1996.

Filed Sept. 30, 1996.

Christopher J. Fox, Berwyn, for appellant.

Steven D. Gladstone, Tannersville, for appellees.

Before BECK, KELLY and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order denying appellant's Petition to Open Judgment. Appellant sets forth ten numbered "questions" for review, all of which allege error in either allowing service by publication, failure to strike the default judgment or failure to open judgment. Because we believe the court erred in failing to open judgment we reverse.

This is a somewhat complex case involving an array of parties to a mortgage. Appellees are the original conveyors of a mortgage interest in property purchased by them in Dingmans Ferry, Pennsylvania. The original mortgagee was Nationwide Lending Group, Inc., which immediately assigned the mortgage to Hill Financial Savings Association. Apparently, Hill Financial became insolvent as it was taken into conserva-

torship by the Federal Savings and Loan Insurance Corporation, more commonly known as the Resolution Trust Corporation (RTC), in March of 1989. Sometime during the period that Hill Financial was held in conservatorship the mortgage began being serviced by Ryland Mortgage. Appellees made certain payments to Ryland but apparently encountered difficulties dealing with them. Ryland, in April, 1992, contended that appellees were in default on the mortgage payments. Appellees contested this fact and asserted that Ryland's reporting of the default to credit agencies was damaging their credit. Sometime thereafter, it appears, appellees suspended payments to Ryland.

On or about May 11, 1994, appellees filed an action to quiet title against Hill Financial asserting fraudulent inducement to the mortgage, however, they experienced difficulty in serving that entity. Original process was returned by the Sheriff's Office with the notation that the office was closed and vacant. On June 15, 1994, the RTC assigned the mortgage to appellant, State Street Bank, as trustee under the pooling and servicing agreement of January 1, 1992.[1] On or about June 16, 1994, appellant commenced an action in mortgage foreclosure against appellees under the subject mortgage for default in payment. The complaint alleged that appellant had been assigned the mortgage as trustee under the pooling and servicing agreement of January 1, 1992.

On or about June 28, 1994, after being served with the complaint in foreclosure, appellees filed a motion for Service

1. There appears to be some dispute as to the date the mortgage was actually assigned to State Street Bank. Appellees assert that the assignment did not take place until late July, 1994, and accuse appellant or its attorney of deceptively backdating the assignment to June 15, 1994. We find this whole inquiry to be somewhat diversionary. It appears obvious that State Street Bank had been assigned the Mortgage either formally or informally as of June 15, 1994, from the RTC. It simply strains logic to believe that a commercial lending institution would knowingly file a mortgage foreclosure action without having any interest in the mortgage that was in default. The point we find essential is that appellees were put on notice of appellant's claim of interest yet proceeded in a fashion which appears to have maximized the chance that State Street would not file a response, thus enabling the taking of a default judgment.

by Publication in their quiet title action. In an affidavit supporting the motion it was asserted that the mortgage in question had been "serviced by a succession of different mortgage services or collection companies." The same affidavit acknowledges the receipt of a complaint in mortgage foreclosure instituted by State Street Bank. The affidavit continues on to state that a search of the Recorder of Deeds office found no assignments of record from Hill Financial and also indicates that Hill Financial had vacated its offices without leaving any forwarding information. Despite the above information appellees' motion for service by publication was granted and shortly thereafter publication was made of the action against Hill Financial. After a failure of Hill Financial, or any successor, to file a responsive pleading appellees mailed a Rule 237.1 notice of intention to take default judgment to Hill Financial on July 28, 1994, at its last known business address, and also mailed a copy to Ryland Mortgage. This notice was apparently forwarded by Ryland to appellant's counsel, Brendan Sherman, who responded by telecopy on August 5, 1994, to appellees' attorney, Steven Gladstone.

Mr. Sherman indicated by letter that he represented appellant, that appellant currently held the mortgage on appellees' home, that they had not been served with the complaint to quiet title and asked to be forwarded a copy and provided twenty days to respond. Appellees' counsel responded by telecopy and seemingly contested appellant's ownership of the mortgage. The letter states that the Pike County records did not indicate that State Street Bank owned the mortgage. The letter further stated that the quiet title action was "independent of" the mortgage foreclosure action instituted by appellant and that neither Ryland nor appellant were defendants in the quiet title action. The letter then refused to extend any additional time for the filing of a response to the complaint to quiet title and did not indicate that a copy of the complaint would be forwarded to appellant's counsel. On August 9, 1994, a mere four days later, appellees' counsel filed a motion for entry of default judgment which was granted. The order states that the mortgage assigned by Nationwide Lending

Group to Hill Financial Savings Association was "Cancelled, Discharged, Invalid ..." On August 12, 1994, appellant's counsel provided appellees' counsel with a copy of the assignment of the mortgage from RTC to appellant.

On or about November 17, 1994, appellees filed a motion for Summary Judgment in the mortgage foreclosure action stating that the mortgage had been cancelled and discharged. On February 24, 1995, appellees' motion for summary judgment was granted. Appellant filed a petition to strike judgment and to intervene and consolidate the quiet title action on February 20, 1995. These petitions were denied on June 6, 1995, but allowed the filing of a petition to open judgment within twenty days. Appellant filed such a petition which was later denied on November 29, 1995. The present appeal followed.

 A petition to open default judgment is an appeal to a court's equitable powers and the trial court's disposition of the petition will not be disturbed absent an error of law or an abuse of discretion. *Deer Park Lumber, Inc. v. Major*, 384 Pa.Super. 625, 559 A.2d 941 (1989). Three factors are relevant when determining whether a default judgment should be opened or not; the timeliness of the petition to open, a reasonable excuse for the failure to appear or file a responsive pleading, and the existence of a meritorious defense. *Id.* Where the three factors are satisfactorily met, the petition to open should be granted.

 The trial court, in denying appellant's petition to open, concludes first that although notified of the intention to take default a few days before the deadline, appellant did nothing. This comment is directed to appellant's excuse for failing to respond to the complaint, the second prong of the above cited test. However, the commentary would be far more compelling had appellant been served with a complaint. Since appellant was never served with a complaint appellant's counsel was without a complaint to respond to. Furthermore, appellant's counsel had just been informed by appellees' counsel that the action was "independent" of the mortgage foreclosure case.

Without the benefit of the complaint to determine for himself the impact of the quiet title action upon appellant's interest, counsel apparently accepted appellees' counsel's statement at face value and took no further action. Had appellant been properly served with a complaint and failed to respond after being notified of the intention to take default judgment, the trial court's commentary would be cogent. Unfortunately this was not the case and appellant's failure to respond is not only excusable but appears to have been induced to a large degree by, what we would consider, somewhat misleading assertions of opposing counsel.[2]

As to the timeliness of filing the petition to open, appellant did file a petition to strike during the pendency of the summary judgment motion, which could very well have been the first appellant was aware of the scope of the quiet title action, and then filed a timely petition to open after the petition to strike was denied. Thus, under the circumstances, we believe appellant responded in relatively timely fashion. Lastly, the trial court concedes that appellant has a meritorious defense and, as such, the guidelines for the opening of judgment have been met and equity demands that the judgment be opened and appellant be given a chance to defend the action.

It is also clear that the motion for service by publication should not have been granted upon the record before the court, a factor which provides additional support for the opening of the judgment.[3] Service of process by publication is an extraordinary measure and great pains should be taken to

2. There is no indication in the record that there exists more than one mortgage on the Fusco property. Given that appellees' counsel was aware that the mortgage had been shuffled around to various companies, and given the allegations in appellant's complaint, it can be assumed that counsel was well aware that State Street was claiming ownership to the very same mortgage that appellees were attempting to void in their quiet title action. In this context counsel's representation that the quiet title action, in which appellees were attempting to void the subject mortgage, was independent of the mortgage foreclosure action, in which the mortgage was alleged to be in default, was certainly confusing if not misleading.

3. The court in *Deer Park Lumber, supra,* found support for the opening of a default judgment in its conclusion that the motion for service by publication should not have been granted.

ensure that the defendant will receive actual notice of the action against him. Further, Pennsylvania Rule of Civil Procedure 430(b)(2), provides that service by publication against heirs and/or assigns shall be permitted if it is set forth in the affidavit that they are unknown. The affidavit supporting the motion for service by publication clearly sets forth the fact that State Street Bank was claiming ownership of the mortgage, a fact that is not dispelled in appellees' affidavit.[4] That affidavit merely indicates that no assignment had been recorded in the Pike County Recorder of Deeds office. Of course, the fact that the assignment was unrecorded did not disprove that there had been a valid assignment and *Deer Park Lumber, supra,* indicates that a party must do more than make a paper search to satisfy the requirements of Rule 430. Perhaps if appellees had demanded proof of assignment which went unanswered, or if another recent assignment was recorded which contradicted appellant's assertion, service by publication would have been appropriate. However, allowing service by publication in the face of a third party's assertion of ownership is completely inconsistent with the concept of personal service and notions of due process and fair play as well as the provisions of Rule 430. Consequently, service by publication should not have been allowed upon the record presented below without at least providing for personal service upon the mortgage company last known to be involved, Ryland, and State Street Bank, who was claiming an interest in the mortgage. Such action was the only way to ensure that the parties in interest received notice of the quiet title action.

Lastly we comment upon certain ethical issues presented in this case. Although zealous representation of a client's inter-

---

**4.** The fact that appellees were having difficulty locating an active office for Hill Financial combined with the fact that the mortgage had been serviced by a "succession" of companies should have at least raised the suspicion that Hill Financial was no longer in business and its assets had been reassigned. Additional caution should have been created by State Street's allegation in its complaint that it was assignee "as Trustee Under That Certain Pooling and Servicing Agreement Dated January 1, 1992." A little additional investigation would have verified this fact as the RTC recorded a power of attorney for Hill Financial in the Recorder of Deeds office along with its publication of notice of appointment of conservator in the Federal Register.

ests is to be commended, such zealousness must be tempered with considerations of fairness and professional courtesy. The failure to serve a complaint upon a party claiming to be a holder of the mortgage when it was rather apparent the original mortgagee was no longer holding it is callous in the least and opportunistic in the worst, an impression which is reinforced greatly by appellees' counsel's refusal to forward a copy of the complaint to appellant's attorney or to grant an extension of time to respond. Any such suspicion is only heightened by appellees' counsel's further representation to appellant's counsel that the quiet title action was "independent of" the mortgage foreclosure action, and that neither Ryland nor State Street Bank were parties to that action, and then later usage of the default judgment to secure a summary judgment against State Street Bank.

The actions of appellees' counsel fully appear to be somewhat discourteous and overzealous. The factual scenario strongly suggests that appellees or appellees' counsel were hopeful of securing a default judgment against an out-of-business defendant which could then be used to extinguish a prima facie valid mortgage held by an out-of-state unrecorded assignee. It is one thing to take a default judgment when a properly served defendant inexplicably chooses not to take defensive actions. It is quite another to take steps which appear to maximize the chance a true party in interest will not respond thus enabling the taking of a default judgment which can then be used to defeat the third party's mortgage foreclosure action. The failure to extend professional courtesy and respect was considered a factor in opening judgment in *Duckson v. Wee Wheelers, Inc.*, 423 Pa.Super. 251, 620 A.2d 1206 (1993). Appellees' counsel's actions clearly evince a lack of courtesy and respect to appellant's counsel and is another factor supporting the opening of judgment here.

The above reasons not only justify the opening of the default judgment, they compel it. Thus, we reverse the order denying appellant's petition to open.

Order reversed. Remanded for further proceedings. Jurisdiction relinquished.