J-A22018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID C. BAILEY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE A. ELDER, ET AL | |
| APPEAL OF: HOYT ROYALTY, LLC | |
| Appellant | No. 79 MDA 2015 |

Appeal from the Order Entered December 10, 2014
in the Court of Common Pleas of Lycoming County
Civil Division at No(s): CV-2008-002327-QT

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:          **FILED NOVEMBER 09, 2015**

Appellant Hoyt Royalty, LLC ("Hoyt Royalty" or "Hoyt", or collectively with the other defendants/appellants[1] "the Hoyts") appeals the December 10, 2014 order of the Lycoming County Court of Common Pleas granting Appellees David C. Bailey, individually, and David C. Bailey and Cecelia

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Hoyt Royalty is the defendant in the underlying action, together with George A. Elder, William Hoyt, Mary Hoyt, Mark Hoyt, Anna Hoyt, Edward Hoyt, Cordelia Ida Hoyt, Theodore Hoyt, George Hoyt, Elk Tanning Company, and Central Pennsylvania Lumber Company.

Bailey as trustees of the David C. Bailey Trusts (collectively, "Appellees" or "the Baileys") summary judgment in their quiet title action. We affirm.[2]

This matter concerns the subsurface mineral rights to a 168-acre tract of land in Lycoming County ("the Property"). In 1893, rights to the Property's subsurface gas and oil were severed from the surface estate by means of the Hoyt/Elk Tanning Deed, which was duly recorded in the office of the Lycoming County Recorder of Deeds.[3] Following this 1893 severance, the Hoyts maintained the oil and gas rights ("the subsurface estate or rights" or "the oil and gas estate or rights"). The reservation of subsurface rights appeared in subsequent deeds preceding 1910. However, the Hoyts did not file a proof of the reservation or otherwise alert the county commissioners or the board of taxation of the reservation.

_____

[2] We note that, in addition to briefs from Hoyt Royalty and the Baileys, this Court received, reviewed, and considered briefs from Appellees International Development Corporation and Andarko E&P Onshore LLC, f/k/a Andarko E&P Company LP, as well as an *amicus curiae* brief from SWN Production Company, LLC. We further note that Chesapeake Appalachia, LLC, Statoil USA Onshore Properties, Bonnell Run Hunting & Fishing Corporation, and Mitsui E&P USA LLC elected not to file formal appellate briefs in this matter.

[3] Over the years, the Property has been granted and conveyed by recorded deed multiple times, most recently on April 13, 2012 to David C. Bailey, Sr. and Cecelia J. Bailey, Trustees of the David C. Bailey, Sr. Trust, plaintiffs in the underlying matter.

In 1910, the Property was sold at a tax sale, and there was no attempt by any party to redeem the Property following the tax sale. The Baileys subsequently purchased the Property in 2001.

On October 7, 2008, David Bailey filed an action to quiet title of the Property in an effort to seek a judicial determination of the ownership status of the Property's previously severed oil and gas estate. Bailey obtained a default judgment by way of praecipe on January 21, 2009.

Over 4 years later, Hoyt Royalty filed a petition to strike and/or open the default judgment. The trial court granted Hoyt's petition and entered an order opening Bailey's default judgment on May 30, 2013.

In the Second Amended Complaint,[4] filed July 19, 2013, the Baileys alleged fee simple ownership of the Property's previously-severed oil and gas estate by abandonment (Count I), cleansing by a tax sale that occurred in 1910 (Count II),[5] and cleansing by a tax sale that occurred in 1940 (Count

_____

[4] The Second Amended Complaint identified David C. Bailey and David C. Bailey and Cecelia Bailey, trustees of the David C. Bailey Trust, as plaintiffs, and Anadarko E&P Co., LP, Chesapeake Appalachia, LLC, Mitsui E&P USA, LLC, and Statoil USA Onshore Properties, Inc. as involuntary plaintiffs. Hoyt Royalty's December 21, 2013 Complaint to Join Additional Defendants joined International Development Corporation and Bonnell Run Hunting and Fishing Corp. as additional defendants.

[5] Specifically, Count II alleged that (1) the Property was sold at a June 10, 1910 tax sale, (2) there was no separate assessment of the subsurface taxes at the time of the sale, (3) the owner of the subsurface estate failed to notify the tax Commissioner of the prior severance of the subsurface estate at any time prior to the tax sale, (4) the taxes assessed at the tax sale represented the assessed value of the entire unseated estate, and (5)
*(Footnote Continued Next Page)*

III). The Baileys further alleged Hoyt lacked standing to challenge their title because it cannot establish itself as a successor to the title of the subsurface estate (Count IV). Hoyt filed an answer alleging that it was the owner of the Property's subsurface estate.[6]

On September 9, 2014, the Baileys filed a motion for summary judgment that alleged the Hoyts were divested of their subsurface rights following the Property's 1910 tax sale because the Hoyts failed to report the oil and gas estate to the county commissioners or tax authorities as required by the Act of 1806. The Hoyts filed responses to the motion for summary judgment that alleged that (1) the Property's oil and gas estate was never assessed for or subject to taxation, (2) the Hoyts were not required to report their interest in the severed subsurface estate to the county commissioners for the purpose of tax assessment, and (3) the tax sale did not comply with notice and due process requirements.

On November 26, 2014, involuntary plaintiff Anadarko E&P Company, LP ("Anadarko") filed a motion to strike Hoyt's second supplemental response to the motion for summary judgment because, Anadarko claimed, the supplemental response raised issues not previously raised in the

*(Footnote Continued)* ————————

neither the surface nor the subsurface estates were redeemed following the 1910 tax sale.

[6] The Baileys claim Hoyt Royalty's Answer admitted or failed to deny the material allegations of the Complaint.

pleadings. The Baileys joined the motion to strike. On December 8, 2014, the trial court granted Anadarko's motion to strike Hoyt's second supplemental response.

On December 10, 2014, the trial court granted the Baileys' motion for summary judgment, declaring them owners of the Property's subsurface estate as well as the surface estate. This appeal followed.

Appellant Hoyt Royalty raises the following three (3) claims for review:

1. Whether the trial court erred when it applied summary judgment standards to the [Baileys'] motion, which in reality, was a motion for judgment on the pleadings that was governed by Pa.R.C.P. 1034?

2. Whether the trial court erred in granting judgment in favor of the Baileys and concluding that Hoyt Royalty and its predecessors-in-interest were divested of their duly recorded, nontaxable oil and gas estate even though disputed issues of fact and law exist as to whether further notice of the Hoyts' recorded severance was required to be given under the Act of 1806 and whether notice of the 1910 tax assessment and sale was statutorily proper or in violation of the Hoyts' federal and state due process rights?

3. Whether the trial court erred in striking Hoyt Royalty's November 21, 2014 response to the [Baileys'] September 9, 2014 motion without affording Hoyt Royalty an opportunity to respond to the motion to strike or amend its pleadings to address the claimed issue of whether the *allegata* and the *probate* agree?

Hoyt Royalty's Brief, p. 7.

This Court's scope and standard of review on an appeal from the grant of a motion for summary judgment is well settled:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is

- 5 -

clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Herder Spring Hunting Club v. Keller*, 93 A.3d 465, 468 (Pa.Super.2014), *reargument denied* (July 11, 2014), *appeal granted*, 108 A.3d 1279 (Pa.2015) (quoting *Shamis v. Moon*, 81 A.3d 962, 968–69 (Pa.Super.2013)).

### A. The 1910 tax sale extinguished the subsurface estate.

We first turn to Hoyt's second claim in which they allege that the trial court erred in determining that their predecessors-in-interest were divested of the subsurface estate as a result of the 1910 tax sale. *See* Hoyt Royalty's Brief, pp. 19-51. They are incorrect.

The substantive aspects of Hoyt's claims that the 1910 tax sale did not extinguish the subsurface estate are controlled by *Herder Spring Hunting Club v. Keller*, 93 A.3d 465, 468 (Pa.Super.2014), a factually and legally indistinguishable case which Hoyt argues this Court incorrectly decided.

In *Herder Spring*, a landowner – Keller – sought to quiet title and moved for summary judgment on his rights to surface and subsurface rights. In 1894, Keller acquired the property at a tax sale. In 1899, he transferred

the surface rights of the property to others by deed but horizontally severed[7] the property, reserving the subsurface rights for himself and his heirs in a recorded deed. Keller did not notify the county commissioners or the board of tax assessment of this horizontal severance. The property was then transferred on numerous occasions. Significantly, the Centre County Commissioners acquired the property in 1935 via a Treasurer's sale at which the property had been offered for unpaid taxes. In 1941, the Centre County Commissioners sold the property to Max Herr, who died intestate in 1944. Herr's widow sold the property to the Herder Spring Hunting Club in 1959, "subject to all exceptions and reservations as are contained in the chain of title."

The trial court found Keller's subsurface rights were recorded, and that the Herder Spring Hunting Club was aware of the reservation of rights, so Keller's heirs/successors were entitled to the subsurface estate. This Court disagreed.

The Superior Court determined that, "[b]ecause of the age of these transfers, the resolution of this matter turns upon an arcane point of law, involving the interpretation of § 1 of Act of 1806, March 28, P.L. 644, 4

---

[7] "Horizontally severed land separates surface from subsurface rights; vertically severed land subdivides an estate into lots." *Herder Spring*, 93 A.3d at 469 n.5.

Sm.L. 346, retitled as 72 P.S. § 5020-409 [].” ***Herder Spring***, 93 A.3d at 468.

The Act of 1806 provided:

It shall be the duty of every person hereafter becoming a holder of unseated lands, by gift, grant or other conveyance, to furnish to the county commissioners, or board for the assessment and revision of taxes, as the case may be, a statement signed by such holder, or his, her, or their agent, containing a description of each tract so acquired, the name of the person or persons to whom the original title from the Commonwealth passed, and the nature, number and date of such original title, together with the date of the conveyance to such holder, and the name of the grantor, within one year from and after such conveyance, and on failure of any holder of unseated lands to comply with the injunctions of this act, it shall be the duty of the county commissioners to assess on every tract of land, respecting which such default shall be made when discovered, four times the amount of the tax to which such tract or tracts of land would have been otherwise liable, and to enforce the collection thereof, in the same manner that taxes due on unseated lands are or may be assessed and collected: Provided, That nothing in this section shall be construed as giving greater validity to unexecuted land warrants than they are now entitled to, nor to the detriment of persons under legal disabilities, provided such person or persons comply with the foregoing requisitions within the time or times limited, respectively, after such disability shall be removed.

1933, May 22, P.L. 853, art. IV, § 409. The ***Herder Spring*** Court explained:

The Act required persons who acquired unseated land[8] to furnish a statement describing that land to the county

_____

[8] “The distinction of seated and unseated land was part of Pennsylvania tax assessment law prior to 1961. Unseated land was unoccupied and unimproved whereas seated land contained permanent improvements as
*(Footnote Continued Next Page)*

commissioners, or the board for the assessment and revision of taxes, so that a proper tax assessment could be levied.

*Herder Spring*, 93 A.3d at 468-69.

The *Herder Spring* Court then reviewed the state of the law as it existed at the relevant time periods. The Court summarized the law as follows:

> The relevant case law established that the acts taken by the commissioners regarding the tax sale were presumed to comport with applicable statutes and regulations, subject to contrary proof produced within two years of the foreclosure. The person who severed rights to unseated land was under an affirmative duty imposed by statute to inform the county commissioners or appropriate tax board of that severance, thereby allowing both portions of the property to be independently valued. If information regarding the severance of rights to unseated property is not given to the commissioners, then any tax assessment for that unseated property must logically be based upon the property as a whole.
>
> If a parcel of unseated land was valued as a whole, and the taxes on that land were not paid, thereby subjecting that property to seizure and tax sale, then all that was valued, surface and subsurface rights, were sold pursuant to any tax sale, absent proof within two years, of the severance of rights.

*Herder Spring*, 93 A.3d at 471-72 (footnote omitted).

Applying this law to the facts, the *Herder Spring* Court determined:

---

*(Footnote Continued)* ——————————

indicate a personal responsibility for taxes." *Herder Spring*, 93 A.3d at 466. The Act of 1806 "treated [seated lands] differently from unseated lands . . . because seated lands are assessed by survey or warrant numbers, regardless of the owners whose names if used at all are only for the purpose of description." *Id.* at 469 (internal quotations and citation omitted).

Because the Kellers originally obtained the property through an 1894 tax sale, they obtained the rights to the property as a whole, and the tax assessors would continue to value the property as a whole unless otherwise informed. When the property was horizontally severed in 1899, the Kellers never informed the county commissioners of their retention of the subsurface rights to the land after selling the surface rights. Pursuant to the Act, it was their affirmative duty to do so. In 1935, the treasurer obtained the rights to the property pursuant to a treasurer's sale. Because the horizontal severance had never been reported to the commissioners, the property continued to be taxed as a whole, just as it had been when the Kellers obtained the property at tax sale. Therefore, the treasurer obtained the property as a whole and transferred it to the commissioners as a whole.

*Herder Spring*, 93 A.3d at 472 (internal citations omitted).[9] The Court then determined the trial court erred in granting the Kellers the subsurface rights, vacated the trial court's order, and remanded the case for the trial court to award the subsurface rights to Herder Spring Hunting Club.[10]

_____

[9] The *Herder Spring* Court also noted the Act's provided remedy – a four-fold increase in the tax assessment for the failure to inform the commissioners of the severance rights – did not apply in situations where there was a Treasurer's or tax sale. *Herder Spring*, 93 A.3d at 471 n.10.

[10] The *Herder Spring* Court recognized this result would likely not occur under modern law as follows:

[W]e are aware that our resolution of this matter is at odds with modern legal concepts. This resolution may be seen as being unduly harsh. However, at the time of the relevant transactions—the seizure of the property for failure to pay tax and the subsequent Treasurer's sale—this was the appropriate answer. We do not believe it proper to reach back, more than three score years, to apply a modern sensibility and thereby undo that which was legally done.

*Herder Spring*, 93 A.3d at 473.

The instant matter presents the same factual and legal scenario as *Herder Springs*: a recorded horizontal severance, governed by the Act of 1806, which was not reported to the county commissioners or tax authorities, followed by a tax sale. Accordingly, *Herder Spring* controls.[11] Accordingly, because the subsurface estate was extinguished by the 1910 tax sale and failure to redeem the severance rights within the allotted two years, the Baileys own the entire property, both the surface and subsurface rights. Therefore, the trial court did not err in granting the Baileys summary judgment.

**B. The trial court correctly applied the summary judgment standard to the Bailey's motion.**

Hoyt also argues that the Baileys' summary judgment motion was actually a motion for judgment on the pleadings, and therefore the trial court erred in applying summary judgment standards. *See* Hoyt Royalty's Brief, pp. 17-18. This claim affords Hoyt no relief.

_____

[11] Regardless of Hoyt's suggestion that *Herder Spring* was incorrectly decided, we are bound by the case. *See Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa.Super.2013) (a panel of this Court cannot overrule another panel). The fact that our Supreme Court has granted review of *Herder Spring* does not alter its precedential value unless and until the Supreme Court overrules this Court's determination. *See Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1101 (Pa.Super.2000) (noting that, despite having been granted a petition for allowance of appeal, a decision remains precedential unless and until it is overturned by the Pennsylvania Supreme Court).

Pennsylvania Rule of Civil Procedure 1035.2 governs motions for summary judgment and provides, in relative part:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> > (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report . . .

Pa.R.C.P. 1035.2.  For summary judgment purposes, "[a] material fact is one that directly affects the outcome of the case."  ***Kuney v. Benjamin Franklin Clinic***, 751 A.2d 662, 664 (Pa.Super.2000).

> The Note to Pa.R.C.P. 1035.2 explains:
>
> Rule 1035.2 sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law.
>
> The evidentiary record may be one of two types. Under subparagraph (1), the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a jury.
>
> An example of a motion under subparagraph (1) is a motion supported by a record containing an admission.  By virtue of the admission, no issue of fact could be established by further discovery or expert report.
>
> . . .
>
> Only the pleadings between the parties to the motion for summary judgment must be closed prior to filing the motion.

Pa.R.C.P. No. 1035.2, *Note*.  Further, "[t]he timing of the motion is important.  Under Rule 1035.2(1), the motion is brought when there is no

- 12 -

genuine issue of any material fact . . . which could be established by additional discovery or expert report." Pa.R.C.P. 1035.2, *1996 Explanatory Comment* (internal quotations omitted).

Here, Appellees properly moved for summary judgment. The trial court correctly determined that summary judgment is appropriate in this matter because Hoyt's pleadings and discovery responses do not dispute any material facts and no additional discovery will bolster Hoyt's defenses. Hoyt effectively claims first, that they were never informed of Lycoming County's assessment of taxes against the oil subsurface estate and the county's intention to sell the estate for failure to pay taxes. This argument is irrelevant, however, because Hoyt admits it never placed the county commissioners on notice of their severed estate rights and did not redeem their interest within two years of the tax sale. ***See Herder Springs***, ***supra***. Next, Hoyt argues that, absent a formal tax assessment, the Hoyts were under no obligation to redeem following the 1910 tax sale. This argument is a legal conclusion, not a material fact, and therefore does not create a factual jury question.[12] Likewise, Hoyt's third argument, that the 1910 tax

_____

[12] Further, the ***Herder Spring*** Court addressed this argument and found it unconvincing. As the Court explained:

> This argument is unavailing. First, the import of the Act is that it allows the tax assessors the opportunity to independently assess a value of severed rights. That opportunity was never given to Centre County. One cannot say that the mineral rights were never valued when the commissioners were not given the

*(Footnote Continued Next Page)*

sale violated the Hoyts' federal and state due process rights is also a legal conclusion, not a matter of material fact, and therefore does not prevent summary judgment.

The pertinent facts of this matter are not in dispute. Rather, Hoyt debates (1) whether they were required to give the county commissioners

_(Footnote Continued)_ ──────────

opportunity to independently value them. Next, that argument has been rejected by our Supreme Court, which stated:

> Appellant further argues that even though a taxing body purports to assess an entire mineral estate, only minerals known to exist at the time and place are actually valued by the assessors, taxed and later sold if taxes become delinquent. Acceptance of this proposition would undoubtedly lead to confusion and speculation, for no one would know what had actually been sold. Attempts to prove that accessors [sic] did or did not know of the presence of oil or gas when they assessed 'minerals' at some point in the past would lead to protracted collateral investigation and litigation. It is true, of course, that an assessor can tax only that which had value. **Rockwell v. Warren County**, [] 77 A. 665 ([Pa.]1910); if no gas or oil exists, the mineral rights should not be taxed as if they did. Nevertheless, an assessment or sale believed to be improper because of overvaluation cannot be collaterally attacked fifty years later. The owner must petition immediately for exoneration. **Wilson v. A. Cook Sons, Co.**, **[s]upra**, [] 148 A. 63[, 65] [([Pa.]1929)].

**Bannard v. New York State Natural Gas Corporation**, [] 293 A.2d 41 ([Pa.]1971). We note that Bannard also recognizes the requirement to promptly challenge a tax sale. **See Morton**, **supra**.

**Herder Spring**, 93 A.3d at 472 n.11.

- 14 -

notice of the horizontal severance, which they admit they did not provide, (2) whether the tax sale was proper, although there is no dispute that no taxes were paid on the property, and (3) whether notice of the tax sale was adequately/properly given, although there is no dispute that notice through publication was actually given.

Because Hoyt does not raise any disputed issues of material fact, the trial court properly granted the Baileys' summary judgment motion.[13]

_____

[13] Hoyt challenges the correct application of relevant law, but not material facts. Therefore, the Baileys would have been entitled to judgment under the standard for a motion for judgment on the pleadings as well.

Pennsylvania Rule of Civil Procedure 1034 provides:

> **Rule 1034. Motion for Judgment on the Pleadings**
>
> (a) After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings.
>
> (b) The court shall enter such judgment or order as shall be proper on the pleadings.

Pa.R.C.P. 1034. "A motion for judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible." **Metcalf v. Pesock**, 885 A.2d 539, 540 (Pa.Super.2005).

> Entry of judgment on the pleadings is appropriate when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Our scope of review is plenary and we will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact. We accept as true all well-pleaded allegations in the complaint.

**Sisson v. Stanley**, 109 A.3d 265, 274 (Pa.Super.2015) (internal quotations and citation omitted).

### C. The trial court properly struck Hoyt Royalty's November 21, 2014 second response to the motion for summary judgment.

Finally, Hoyt claims the trial court improperly granted Anadarko's motion to strike Hoyt's Second Supplemental Response to the Baileys' Motion for Summary Judgment. **See** Hoyt Royalty's Brief, pp. 51-57. Specifically, Hoyt claims (1) Anadarko lacked standing to strike Hoyt's response, (2) Hoyt raised the issue of improper notice in its pleadings, and (3) the trial court should have allowed Hoyt to amend the pleadings if it felt notice was not properly raised. **Id.** This claim does not afford Hoyt relief.

First, a determination of whether or not Anadarko had standing is irrelevant. The Baileys filed a motion to strike for identical reasons. Therefore, even if the trial court ruled Anadarko had no standing, it could have simply struck the response based on the Baileys' motion, whose standing Hoyt does not challenge.

Second, Hoyt's claim that the trial court erred by not allowing Hoyt to amend the pleadings to include an allegation that Hoyt did not receive the mandated 60-day notice of the tax sale is unconvincing.

This Court has explained the legal principles underlying the review of a grant or denial of leave to amend the pleadings as follows:

> [Pennsylvania] Rule [of Civil Procedure] 1033 allows a party to amend his or her pleadings with either the consent of the adverse party or leave of the court. Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party.

The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities. Moreover, we have held:

Even where a trial court sustains preliminary objections on their merits, it is generally an abuse of discretion to dismiss a complaint without leave to amend. There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile. However, the right to amend should not be withheld where there is **some reasonable possibility** that amendment can be accomplished successfully. In the event a demurrer is sustained because a complaint is defective in stating a cause of action, if it is evident that the pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended pleading.

*Hill v. Ofalt*, 85 A.3d 540, 557 (Pa.Super.2014) (emphasis in original) (internal quotations and citation omitted).

Although Pa.R.C.P. 1033 permits liberal granting of pleading amendments, the requested amendment to add the tax sale 60-day notice claim would have been futile. As the trial court explained:

[Hoyt] also contends in its Second Supplemental Response, that the 60-day notice period was not observed. While the Second Supplemental Response has been stricken, the court wishes to note that this objection is also barred by the two-year redemption period.

Trial Court Opinion, p. 8 n.10.

Because the proposed amendment would not have raised a viable argument for Hoyt, the trial court's refusal to allow the amendment was does not represent error.

- 17 -

For the preceding reasons, we affirm the trial court's December 10, 2014 order granting the Baileys' summary judgment motion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2015