J-A22016-15

2015 PA Super 253

| | |
|---|---|
| NORTHERN FORESTS II, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KETA REALTY COMPANY, KETA GAS AND OIL COMPANY, KETA GAS AND OIL CORPORATION, GEORGE C. LEVIN, UNITED STATES BANKRUPTCY TRUSTEE AND MANUFACTURERS LIGHT AND HEAT COMPANY, THEIR SUCCESSORS AND ASSIGNS AND ANYONE CLAIMING BY, THROUGH OR UNDER THEM, OR ANY OF THEM, ANADARKO E & P ONSHORE, LLC, SOUTHWESTERN ENERGY PRODUCTION COMPANY, RONALD SAWYER, KATHLEEN SAWYER, DALE BLACK, LORI BLACK, MICHAEL CENTINI, KAREN CENTINI, VINCE DANDINI, SARA DANDINI, EDGAR SHENK, ELAINE SHENK, DAVID HAUS, SHARON HAUS AND GAYLA LOCH, ULTRA RESOURCES, INC., INTERNATIONAL DEVELOPMENT CORPORATION, WEVCO PRODUCTION, INC., JACKSON CORNER SPORTSMEN, INC., SAMUEL ROCKEY, KAREN ROCKEY, CHESAPEAKE APPALACHIA, LLC, STATOIL USA ONSHORE PROPERTIES, INC., LANCASTER EXPORATION & DEVELOPMENT COMPANY, LLC, TRUSTEES OF THOMAS E. PROCTOR HEIRS TRUST, TRUSTEES OF THE MARGARET O. F. PROCTOR TRUST, FOREST RESOURCES, LLC, KOCJANCIC FAMILY LIMITED PARTNERSHIP, HAROLD H. WOLFINGER, JR., WILLIAM L. HEMENWAY, HARVEY HINMAN, SARAH C. PRESTON, LINDA DAVIDGE, PENNLYCO, LTD., GLEN W. HEFFELFINER, MICHAEL E. DAPAOLI, JOHN F. GERRITY, JOAN M. GERRITY, STEVEN M. STROUSE, RENEE M. STROUSE, DAVID W. CRITICS, ANGELA R. CRITICS, MARK S. CONRAD, | |

DOLORES CONRAD, DAVID B. DUSEL, MARY LOUISE WATERS, ENERPLUS RESOURCES (USA) CORPORATION, ENERPLUS RESOURCES, BROOKE E. FULLER, RICKY E. YOUNG, NADINE C. YOUNG, STEPHEN MATTO, KIM L. MATTO, JOHN F. KNOPP, SANDRA J. KNOPP, JAMES D. WEATHERWAX, NICOLE R. WEATHERWAX, DUTCH HILL HUNTING CLUB, ATLANTIC HYDROCARBON, LLC, EXCO PRODUCTION COMPANY (PA) LLC, EXCO RESOURCES, INC., BG PRODUCTION COMPANY (PA) LLC, WADE E. JUNE, MELISSA L. JUNE, MICHAEL J. SNYDER, TIMOTHY C. BOWEN, THERESE L. BOWEN, PAUL D. CRISSMAN, MARK A. MCGOVERN, RONDA J. MCGOVERN, JAMES A. ROBINSON, COGAN HOUSE TOWNSHIP, MOUNTAIN DEVELOPMENT GROUP, DAVID ROCKEY, OHIO KENTUCKY OIL CORPORATION, MITSUI E & P USA, LLC, GCO MINERALS COMPANY, DANNA WEBBER, TRAVIS CROOKS, FRANCINE CROOKS, CYNTHIA STANTION-MCKENNEY (POA TERRY GEISE) AND AS TO ANY AND ALL ENTITIES WHICH CLAIM ANY INTEREST WHATSOEVER TO SUBJECT MATTER OF THIS SUIT

        Appellee

Nos. 1007 MDA 2014

Appeal from the Order Dated May 20, 2014
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): CV-1988-002356-QT

NORTHERN FORESTS II, INC.     IN THE SUPERIOR COURT OF
             PENNSYLVANIA

        v.

KETA REALTY COMPANY, KETA GAS AND OIL COMPANY, KETA GAS AND OIL CORPORATION, GEORGE C. LEVIN, UNITED STATES BANKRUPTCY TRUSTEE AND MANUFACTURERS LIGHT AND HEAT COMPANY, THEIR SUCCESSORS AND ASSIGNS AND ANYONE CLAIMING BY, THROUGH OR UNDER THEM, OR ANY OF THEM, ANADARKO E & P ONSHORE, LLC, SOUTHWESTERN ENERGY PRODUCTION COMPANY, RONALD SAWYER, KATHLEEN SAWYER, DALE BLACK, LORI BLACK, MICHAEL CENTINI, KAREN CENTINI, VINCE DANDINI, SARA DANDINI, EDGAR SHENK, ELAINE SHENK, DAVID HAUS, SHARON HAUS AND GAYLA LOCH, ULTRA RESOURCES, INC., INTERNATIONAL DEVELOPMENT CORPORATION, WEVCO PRODUCTION, INC., JACKSON CORNER SPORTSMEN, INC., SAMUEL ROCKEY, KAREN ROCKEY, CHESAPEAKE APPALACHIA, LLC, STATOIL USA ONSHORE PROPERTIES, INC., LANCASTER EXPORATION & DEVELOPMENT COMPANY, LLC, TRUSTEES OF THOMAS E. PROCTOR HEIRS TRUST, TRUSTEES OF THE MARGARET O. F. PROCTOR TRUST, FOREST RESOURCES, LLC, KOCJANCIC FAMILY LIMITED PARTNERSHIP, HAROLD H. WOLFINGER, JR., WILLIAM L. HEMENWAY, HARVEY HINMAN, SARAH C. PRESTON, LINDA DAVIDGE, PENNLYCO, LTD., GLEN W. HEFFELFINER, MICHAEL E. DAPAOLI, JOHN F. GERRITY, JOAN M. GERRITY, STEVEN M. STROUSE, RENEE M. STROUSE, DAVID W. CRITICS, ANGELA R. CRITICS, MARK S. CONRAD, DOLORES CONRAD, DAVID B. DUSEL, MARY LOUISE WATERS, ENERPLUS RESOURCES (USA) CORPORATION, ENERPLUS RESOURCES, BROOKE E. FULLER, RICKY E. YOUNG, NADINE C. YOUNG, STEPHEN MATTO, KIM L.

MATTO, JOHN F. KNOPP, SANDRA J.
KNOPP, JAMES D. WEATHERWAX,
NICOLE R. WEATHERWAX, DUTCH HILL
HUNTING CLUB, ATLANTIC
HYDROCARBON, LLC, EXCO
PRODUCTION COMPANY (PA) LLC, EXCO
RESOURCES, INC., BG PRODUCTION
COMPANY (PA) LLC, WADE E. JUNE,
MELISSA L. JUNE, MICHAEL J. SNYDER,
TIMOTHY C. BOWEN, THERESE L.
BOWEN, PAUL D. CRISSMAN, MARK A.
MCGOVERN, RONDA J. MCGOVERN,
JAMES A. ROBINSON, COGAN HOUSE
TOWNSHIP, MOUNTAIN DEVELOPMENT
GROUP, DAVID ROCKEY, OHIO
KENTUCKY OIL CORPORATION, MITSUI E
& P USA, LLC, GCO MINERALS
COMPANY, DANNA WEBBER, TRAVIS
CROOKS, FRANCINE CROOKS, CYNTHIA
STANTION-MCKENNEY (POA TERRY
GEISE) AND AS TO ANY AND ALL
ENTITIES WHICH CLAIM ANY INTEREST
WHATSOEVER TO SUBJECT MATTER OF
THIS SUIT
APPEAL OF:  ULTRA RESOURCES, INC.

Nos. 1054 MDA 2014

Appeal from the Order Dated May 20, 2014
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): CV-1988-002356-QT

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

OPINION BY JENKINS, J.:                              Filed:  December 4, 2015

_____

[*] Retired Senior Judge assigned to the Superior Court.

Northern Forests II, Inc. ("NF") filed an action to quiet title in 1988 and entered a default judgment in its favor in 1989. In 2013, the trial court ordered the judgment stricken as void *ab initio* due to lack of jurisdiction. Subsequently, NF filed an amended complaint alleging that it owned the subject property via adverse possession on the basis of the 1989 judgment. In an order entered on May 20, 2014 and clarified on June 16, 2014, the trial court sustained the preliminary objections of multiple defendants and dismissed the amended complaint for failure to state a cause of action.

NF and Ultra Resources, Inc. ("Ultra"), a lessee of NF, filed timely appeals from the order of dismissal. We affirm.

I.

Pursuant to a deed dated June 24, 1987, NF acquired approximately 3,665 acres of land in Lycoming County designated as Warrants 1620, 1621, 1622 and 1626 ("the Property"). On December 12, 1988, NF filed an action to quiet title against five named defendants,[1] their heirs and assigns, and anyone claiming by, through or under them. NF's complaint alleged that NF owned all oil, gas and mineral subsurface rights relating to the Property on the theory of adverse possession. At the time of NF's action, however, none

---

[1] Keta Realty Company; Keta Gas And Oil Company; Keta Gas And Oil Corporation; George C. Levin, United States Bankruptcy Trustee For The Estate of Keta Gas And Oil Company; and Manufacturers Light And Heat Company.

of the named defendants had any ownership interest in the subsurface rights, a fact that was evident from instruments of record in the Lycoming County Recorder of Deeds. Instruments of record as of December 1988 showed that record title owners of subsurface rights included Clarence Moore ("Moore"),[2] Kenneth Yates, a co-tenant of Moore ("Yates"),[3] and the heirs of Thomas Proctor ("Proctor Heirs").[4]

On December 13, 1988, one day after filing the complaint, NF's attorney filed a "motion and affidavit for leave to obtain service by advertisement". The affidavit consisted of one sentence in which the attorney averred that he "does not know the current whereabouts of the defendants, and the principals of the corporate entities are unknown, and he does not know any successors or assigns of the above or anyone claiming by, through or under them, or any of them." The affidavit requested that the court permit service "on the defendants, their successors and assigns,

_____

[2] Moore was the record title owner of subsurface rights in Warrants 1620, 1622 and 1626 via deeds dated April 30, 1975 and December 7, 1983.

[3] Yates was a title owner and tenant in common with Moore as to a 12.5% interest in Warrants 1620, 1622 and 1626 by virtue of an instrument dated October 15, 1984.

[4] Thomas Proctor acquired title to surface and subsurface rights in Warrant 1621 pursuant to a June 3, 1891 deed recorded in the Lycoming County Land Records at Book 128, Page 392. Proctor later sold the surface rights but reserved the subsurface rights for himself, his heirs and assigns. Proctor's rights and interests are now held by his heirs (the Thomas E. Proctor Heirs Trust and the Trustees of the Margaret O. F. Proctor Trust).

and anyone claiming by, through or under them or any of them by publication." The affidavit said nothing about whether the attorney did any investigation into the defendants' whereabouts before filing his motion for alternative service.

On December 16, 1988, the trial court granted NF's motion for alternative service. Subsequently, counsel for NF entered six separate publications in local newspapers relating to the complaint. Each publication stated that NF had filed an action to quiet title and identified the metes and bounds of the land subject to the quiet title action. None of these publications, however, named Moore, the Proctor Heirs, or Yates; they merely purported to notify the five named defendants and their "successors and assigns" about the lawsuit.

On February 6, 1989, counsel for NF filed a petition for judgment along with his affidavit that defendants had been served by publication but had not filed an answer "although the time [in] which to do so has expired." On February 10, 1989, the court entered a default judgment against all defendants "unless defendants, within thirty days of this order commence an action in ejectment." No defendant filed an action in ejectment. On April 4, 1989, NF entered a final judgment via praecipe.

Between 1989 and 2012, various energy companies entered into real estate transactions and oil/gas leases with regard to the Property. In late 2012 and early 2013, these energy companies – International Development

Corporation ("IDC"), Southwestern Energy Production Company ("Southwestern"), Lancaster Exploration and Development Company ("Lancaster"), and two Anadarko entities, Anadarko E & P Company and Anadarko Petroleum Corporation (collectively "Anadarko") – filed petitions to strike or open the judgment, alleging that they own certain subsurface rights in the Property as successors in interest to Moore, Yates and/or the Proctor Heirs.[5] Southwestern and Anadarko claimed that Moore, Yates and the Proctor Heirs were indispensable parties in NF's 1988 action, and NF's failure to join them rendered NF's judgment void. Moreover, all petitioners claimed that NF's counsel's 1988 affidavit failed to explain why NF could not make regular service on the named defendants or the nature or extent of NF's investigation to locate potential defendants. This, petitioners said, constituted another defect on the face of the record which rendered the judgment void.[6]

_____

[5] It is unnecessary to identify the precise boundaries within which each company claims to own subsurface rights. The following will suffice for purposes of this appeal. Southwestern alleges that it is the successor in title to subsurface rights previously owned by Moore and the Proctor Heirs. Anadarko alleges that it is the successor in title to subsurface rights previously owned by Moore and Yates. Lancaster alleges that pursuant to several leases, the Proctor Heirs leased to Lancaster subsurface rights in Warrant 1621, and Lancaster subsequently assigned Southwestern a portion of Lancaster's interests under these leases. IDC alleges that it is the successor in title to subsurface rights previously owned by Moore.

[6] The Proctor Heirs did not file a petition to strike. Instead, in March 2013, they filed statements notifying all parties that they are record title owners of
*(Footnote Continued Next Page)*

In a memorandum and order dated February 8, 2013, the trial court struck NF's judgment on the ground that NF failed to make proper service of process on the original named defendants.[7] The court certified the order for immediate interlocutory appeal, but the Superior Court subsequently denied NF's motion for leave to take an interlocutory appeal.

Subsequently, the trial court granted NF leave to file an amended complaint. On January 29, 2014, NF filed an amended complaint alleging three counts: (1) adverse possession for more than 21 years before 1988, (2) adverse possession based on the 1989 judgment, and (3) a declaratory judgment that NF owned the mineral rights, subject only to certain interests under or through NF. NF's amended complaint named over 90 defendants, including several of NF's successors and assigns whose interests are similar to NF's, viz., Ultra Resources ("Ultra"), Chesapeake Appalachian ("Chesapeake"), and Statoil USA ("Statoil").

Multiple defendants – Mountain Development Group, Inc., Cynthia McKenney, the Proctor Heirs, IDC and Lancaster – filed preliminary objections alleging that NF failed to state a cause of action. Anadarko and Southwestern both filed answers to the amended complaint and

_____
(Footnote Continued) _____

acreage in Warrant 1621 on the Property. Neither Moore nor Yates filed a petition to strike or any other document.

[7] The trial court did not discuss whether Moore, Yates and the Proctor Heirs were indispensable parties.

- 9 -

subsequently filed motions for summary judgment. Chesapeake and Statoil filed an answer to the amended complaint. Ultra did not file a responsive pleading.

In an opinion and order on May 20, 2014, the court sustained the preliminary objections and dismissed NF's amended complaint for failure to state a cause of action. On June 16, 2014, the court amended its order to clarify that the order of dismissal applied to all defendants.[8] NF and Ultra filed timely notices of appeal, and NF, Ultra and the trial court complied with Pa.R.A.P. 1925.

II.

NF raises the following issues on appeal:

1. Did the trial court, in its Order filed on February 11, 2013 (later amended by Order filed on March 6, 2013 to grant the Plaintiff permission to take an interlocutory appeal), err in striking the 1989 Judgment?

2. Should a judgment which established the status of real property rights (not a mere money judgment), which has been extensively relied upon by private property owners and various business entities and which has been unchallenged and unquestioned for more than 23 years be automatically stricken due to the fact that the affidavit supporting the service by publication was allegedly not in full technical compliance with Pa.R.C.P. 430 and was stricken without any consideration of the facts and circumstances regarding the same, without any consideration of: laches, reliance by good faith purchasers for value, the equities involved in this matter and of other relevant factors which support allowing the judgment to stand?

---

[8] This order was appealable as a final order because it "dispose[d] of all claims and all parties." Pa.R.A.P. 341(b)(1).

3. Did the trial court err in granting preliminary objections in the form of a demurrer and dismissing with prejudice the First Amended Complaint?

4. Where 3,665 acres of oil gas and mineral rights are the "res" of a Quiet Title action, where there were eight separate advertisements in newspapers in general circulation prior to the entry of a final judgment in such action, where such final judgment has been in existence and undisturbed for over 23 years, where numerous persons and entities have relied on said Final Judgment in conducting their real property and business affairs, and where Northern Forests which obtained such judgment was also the surface owner of the 3,665 acres of land, do these factors, together the other relevant factors and circumstances which exist in this case, constitute actual possession for adverse possession purposes or does the First Amended Complaint otherwise state a cause of action for any other similar legal doctrines such as repose, statute of limitations, estoppel, waiver, or other similar doctrines relating to equitable principles?

Brief For NF, at 3-4. Ultra raises the following issues on appeal:

1. Whether under Pennsylvania law a default judgment is required to be stricken, under all circumstances -- regardless of principles of reliance, estoppel, waiver, laches, delay, actual notice, prejudice, futility, materiality, intervening good-faith-purchasers-for-value and any other facts -- solely because it is later shown that an affidavit filed in connection with service by publication under Rule 430 of the Pennsylvania Rules of Civil Procedure ("Rules") Rule 430 in the action did not contain a description of the plaintiff's investigation to locate defendants prior to effecting service by publication?

2. Whether Rule 430 only requires that a plaintiff file an affidavit stating that assigns of a named former owner are "unknown" in order for the court to permit service by publication on such assigns?

3. Whether a quiet title judgment that has been outstanding and unchallenged for over twenty-one years may give rise to a claim for adverse possession under Pennsylvania law?

Brief For Ultra, at 4.

Preliminarily, we note that although Ultra failed to file a responsive pleading to NF's amended complaint below, this omission does not constitute a waiver of Ultra's arguments in this appeal, because NF's amended complaint did not include a notice to plead. *See* Pa.R.Civ.P. 1026(a) ("every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, but no pleading need be filed unless the preceding pleading contains a notice to defend or is endorsed with a notice to plead").

We also note that although Chesapeake and Statoil jointly filed a brief raising the same issues as NF and Ultra, Chesapeake and Statoil cannot obtain relief in this Court because they failed to file a notice of appeal from the June 16, 2014 order of dismissal.

III.

We address the first two issues in NF's and Ultra's briefs together, because they boil down to one question: did the trial court properly strike the 1989 judgment entered in favor of NF? We answer this question in the affirmative.

This Court's review of an order striking a judgment "is limited to whether the trial court manifestly abused its discretion or committed an error of law." *Koresko & Associates, P.C. v. Farley*, 826 A.2d 6, 7 (Pa.Super.2003).

A petition to strike a judgment

may be granted only if a fatal defect or irregularity appears on the face of the record... In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the [judgment] is given, *i.e.,* the complaint and the documents [of record]. Matters *dehors* the record filed by the party in whose favor the [judgment] is given will not be considered. If the record is self-sustaining, the judgment will not be stricken.

*Osprey Portfolio, LLC v. Izett*, 32 A.3d 793, 795-96 (Pa.Super.2011).[9]

The lack of jurisdiction is a proper basis for striking a judgment when the jurisdictional defect is evident on the face of the record. *DeCoatsworth v. Jones*, 639 A.2d 792, 796 (Pa.2004).

In this case, two jurisdictional defects appear on the face of the record, either of which constituted sufficient reason to strike NF's judgment: NF failed to join indispensable parties in its 1988 action to quiet title, and NF failed to make proper service of process on any defendant in the 1988 quiet title action. We discuss each defect in turn.

The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction. *Sabella v. Appalachian Dev. Corp.,* 103 A.3d 83, 90 (Pa.Super.2014). "Failure to join an indispensable party goes absolutely to the court's jurisdiction and the

---

[9] In contrast, in a petition to open judgment, the court may consider matters *dehors* the record. *Acquilino v. Philadelphia Catholic Archdiocese*, 884 A.2d 1269, 1283 (Pa.Super.2005).

issue should be raised *sua sponte.*" **Barren v. Dubas**, 441 A.2d 1315, 1316 (Pa.Super.1982).

> A party is indispensable
>
> when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. **City of Phila. v. Commonwealth**, [], 838 A.2d 566, 581 (Pa.2003), *quoting* **Sprague v. Casey**, [], 550 A.2d 184, 189 (Pa.1988). 'If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation.' **Grimme Combustion, Inc. v. Mergantime Corp.**, [], 595 A.2d 77, 81 (Pa.Super.1991), *citing* **Sprague**, *supra*. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation:
>
> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> **Martin v. Rite Aid of Pa., Inc.**, 80 A.3d 813, 814 (Pa.Super.2013); accord **Mechanicsburg Area Sch. Dist. v. Kline**, [], 431 A.2d 953, 956 (Pa.1981). 'In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.' **Pa. State Educ. Ass'n v. Commonwealth**, [], 50 A.3d 1263, 1277 (Pa.2012), quoting **CRY, Inc. v. Mill Serv., Inc.**, [], 640 A.2d 372, 375 (Pa.1994).
>
> This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties. **Hartzfeld v. Green Glen Corp.**, [], 552 A.2d 306, 310 (Pa.Super.1989).

**Orman v. Mortgage I.T.**, 118 A.3d 403, 406-07 (Pa.Super.2015).

Although the trial court did not decide whether NF failed to join indispensable parties, we will address this issue because of its jurisdictional nature. **Sabella,** 103 A.3d at 90; **Barron**, 441 A.2d at 1316. Moore, Yates and the Proctor Heirs owned subsurface rights on the Property at the time of NF's quiet title action. NF sought in its quiet title action to divest Moore, Yates and the Proctor Heirs of their ownership rights, but the record is clear that NF failed to join these persons as defendants. Because they obviously were indispensable parties, NF's failure to join them as defendants mandated that NF's judgment be stricken. **Orman**, 118 A.3d at 406-07 (citing **Hartzfeld**, 552 A.2d at 310).

NF claims that it failed to name Moore, Yates and the Proctor Heirs as defendants in 1988 due to conveyancing errors committed by their predecessors in title. Specifically, NF contends: (1) a deed to a prior title holder, Keta Gas and Oil Company, was erroneously listed in the Grantor's Index of the Recorder of Deeds as a deed to Reta Gas and Oil Company; and (2) Astra Oil and Gas Corp., a prior title holder, failed to file a separate instrument identifying the change of its corporate name from Astra Oil and Gas Corp. ("Astra") to KGA Industries, Inc. ("KGA"), in accordance with required recording practices of Lycoming County. These errors, NF claims, prevented it from learning that (1) Keta Realty Co. conveyed its interest in the Property to Keta Gas and Oil Company, (2) Keta Gas and Oil Company conveyed its interest to Astra, (3) Astra changed its name to KGA, and (4)

KGA conveyed its interest to Moore. We disagree. The law requiring joinder of indispensable parties is strict and non-waivable. No matter how exhaustive or diligent the plaintiff's title search may be, its failure to join an indispensable party deprives the court of jurisdiction.[10] *See*, *e.g.*, *Orman*, 118 A.3d at 406-07.

In the trial court, NF suggested that its act of naming Keta Gas and Oil Company as a defendant along with Keta's "heirs and assigns" made NF's complaint and judgment valid against successors in title such as Moore, Yates and the Proctor Heirs. Again, we demur. Notice "is a fundamental requirement of due process," but notice is adequate only when it is "reasonably calculated to inform a party of the pending action and provides [him with] an opportunity to present objections to the action." *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 383 (Pa.2006). Naming a predecessor in title and his "heirs and assigns" is not reasonably calculated to notify a successor in interest of the lawsuit. The complaint must name the successor in interest individually, not merely group him within the category of "heirs and assigns". *See Ress v. Barent*,

_____

[10] In any event, NF's search for parties clearly was not diligent. Public records which Anadarko and Southwestern appended to their petition to strike demonstrate that none of the parties sued by NF had any interest in the Property as of 1955, 33 years before NF's lawsuit. The same records show that Keta Gas and Oil Company, the final party to hold title among the parties sued by NF, conveyed its interest to Astra in 1955, yet NF failed to join Astra as a defendant -- let alone any person holding an ownership interest in 1988.

548 A.2d 1259, 1265 (Pa.Super.1988) (upon concluding that Sadye and Sanford, two heirs of company founder, had standing to sue successor company, panel ordered Sadye and Sanford to amend complaint to aver that they are the sole heirs and assigns, or, in the alternative, to aver "*the names* of all heirs and assigns").

The second jurisdictional defect on the face of the record is NF's failure to make proper service of process on any defendant in its 1988 action. Although the trial court issued an order in 1989 permitting NF to serve all interested parties via publication, the record demonstrates that this order was issued in error, for NF failed to provide any justification for serving process in this "extraordinary" manner. **Sisson v. Stanley**, 109 A.3d 265, 270 (Pa.Super.2015).

"The rules relating to service of process must be strictly followed," because "jurisdiction of the court over the person of the defendant is dependent upon proper service having been made." **Sharp v. Valley Forge Med. Center & Heart Hosp., Inc.**, 221 A.2d 185, 187 (Pa.1966). Pa.R.Civ.P. 410 provides the general service provisions for actions involving real property: "In actions involving title to [or] interest in … real property, original process shall be served upon the defendant in the manner provided by [Pa.R.Civ.P.] 400 *et seq*." Pa.R.Civ.P. 410(a). Proper service usually requires handing a copy to the defendant or to other individuals enumerated

in Pa.R.Civ.P. 402(a). Other rules apply in limited circumstances. **See**, **e.g.**, Pa.R.Civ.P. 404 (service outside the Commonwealth).

If service is unsuccessful under these rules, the plaintiff may move for leave to make alternative service under Pa.R.Civ.P. 430. Rule 430 provides in relevant part:

> (a) If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made...
>
> (b)(2) When service is made by publication upon the heirs and assigns of a named former owner or party in interest, the court may permit publication against the heirs or assigns generally if it is set forth in the complaint or an affidavit that they are unknown.

Rule 430 "applies only where '**service cannot be made**' in the normal fashion." **Sisson**, 109 A.3d at 270-71 (citing Pa.R.Civ.P. 430(a); emphasis added in **Sisson**). Rule 430 "governs motions for service by special order of court, including service by publication." **Id**. at 269. "Service of process by publication is an extraordinary measure and great pains should be taken to ensure that the defendant will receive actual notice of the action against him." **Sisson**, 109 A.3d at 270.

Because "service by publication is the exception, not the rule," the plaintiff must first meet the requirements of Rule 430(a) to avail itself of the publication provisions within Rule 430(b). **Deer Park Lumber, Inc. v. Major**, 559 A.2d 941, 945 (Pa.Super.1989). Rule 430(a) prescribes that a

motion for leave to make alternative service must include "an affidavit stating the nature and extent of the investigation undertaken to locate the defendant." **Deer Park**, 559 A.2d at 944. The affidavit must demonstrate that the plaintiff exhibited "due diligence and good faith" in attempting to locate the defendants. **Sisson**, 109 A.3d at 271. One illustration of a good faith effort involves "(1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act [...], (2) inquiries of relatives, neighbors, friends, and employers of the defendant, and (3) examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records." Note, Pa.R.Civ.P. 430(a). While this illustration "[is] by no means exhaustive, [it] is at least indicative of the types of procedures [intended under] Rule 430. In essence, it provides that more than a mere paper search is required before resort can be had to the publication provisions of Rule 430(b)." **Deer Park**, 559 A.2d at 946.

Here, NF's counsel's affidavit totally failed to describe what efforts he made to discover the whereabouts of any person holding an interest in the Property. Therefore, the trial court properly struck the judgment due to NF's failure to satisfy the requisites for service of process by publication.

The analysis in **Sisson**, a recent Rule 430 decision, is especially pertinent to our decision. The parties in **Sisson** disputed ownership of the right to mine Marcellus Shale gas underlying property in Susquehanna County. In 1953, Joseph Stanley transferred ownership of the property to

- 19 -

Pauline Battista subject to a reservation of "all of the oil and gas underlying the [Property]." In 1986, Battista transferred the property to the Sissons, subject to the same reservation. Chesapeake Appalachia, LLC, approached the Sissons with a proposed lease agreement that would allow Chesapeake to extract shale gas underlying the property. Chesapeake advised the Sissons of a cloud in their title based on the reservations in the 1953 and 1986 deeds. The Sissons filed an action to quiet title naming as defendants "Joseph M. Stanley, his heirs, successors, executors, assigns, and any persons claiming by, through or from them." The trial court issued an order authorizing service of the complaint by publication based upon an affidavit by the Sissons' attorney that he could not locate the defendant or his heirs despite searching local deed records and telephone directories as well as "various Internet sites". *Id*. at 268. The Sissons published a notice of the pending action in a local newspaper. No interested party came forward to defend against the action, and the trial court ultimately entered judgment against the named defendants.

Three months later, Joseph Stanley's widow filed a petition to open, alleging that the trial court lacked jurisdiction to enter judgment because the Sissons failed to effect proper service of process. The trial court agreed and entered an order opening judgment. Subsequently, the court dismissed the Sissons' action under the statute of limitations. This Court affirmed, reasoning that "[the Sissons' attorney's] affidavit is *facially deficient*. An

- 20 -

examination of each paragraph of this affidavit evidences a complete lack of due diligence and good faith to locate any of the named defendants to this action." *Id*. at 271 (emphasis added). The Court analyzed the affidavit as follows:

> In paragraph 1, counsel indicates he searched the records in the Recorder of Deeds Office of Susquehanna County. In their action, [the plaintiffs] named Joseph Stanley, his heirs, successors, executors, assigns, and any persons claiming by, through, or from them. One would presuppose that a good faith effort to locate heirs would include a search for records at the Register of Wills office. Although counsel notes that the Recorder of Deeds office in Susquehanna County also houses the Register of Wills, his affidavit only mentions a search of the Recorder of Deeds records. Counsel already had the relevant deeds to the property in which Joseph M. Stanley transferred real property to Pauline M. Battista subject to a reservation of rights in the underlying oil and gas. It is therefore not clear what counsel hoped to gain from his search of the Recorder of Deeds office. Regardless, the affidavit does not indicate in any manner that a relevant search was performed to locate any wills or other probate records. A good faith search for heirs should have included at least this basic research. Had this been done, counsel would have found, as the trial court noted, the will of E.J. Stanley, Joseph's father, which identified no fewer than twelve siblings to Joseph.
>
> Concerning paragraph 2 of the affidavit, counsel apparently did not consider that some or all of Joseph M. Stanley's heirs could have moved since 1953. A search of local telephone directories is certain to be fruitless if any surviving heir is no longer local. Certainly, the age of the 1953 Deed and [the plaintiffs]' naming all heirs as defendants suggests searches of other records, such as obituaries, should have been performed. In their petition to open and/or strike, [the defendants] assert a simple search of the local newspaper obituaries would have revealed Joseph's death and identified his surviving sister, nieces and nephews. Yet, counsel did not perform this seemingly logical search. We are not setting forth a *per se* rule requiring an obituary search for possible heirs, but in this case counsel's failure to check local death record resources illustrates how his efforts so clearly fell

- 21 -

below the reasonable due diligence necessary to justify service by publication.

Finally, with regard to paragraph 3, counsel's complete failure to identify which Internet sites he visited or what searches he ran provides no basis upon which to ascertain if counsel exercised due diligence and good faith in his efforts to locate Joseph Stanley's heirs. Given the ease of identifying and using sophisticated Internet services to trace ancestry and family history, it is inconceivable that counsel, employing good faith efforts, was unable to locate a single Stanley heir.

*Id*. at 271-72. Furthermore:

Counsel's attempt to locate any of the named defendants to this action does not demonstrate even a minimal effort to conduct a search of those resources identified to the Note to Rule 430(a). Resources noted to Rule 430(a) include inquiries of postal authorities, inquiries pursuant to the Freedom of Information Act, inquiries of relatives, neighbors, friends, and employers of the defendant, and examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records. Pa.R.C.P. 430(a), *note.* With the exception of a non-specific reference to local telephone directories, counsel's affidavit falls woefully short of even the minimal good faith efforts suggested under Rule 430(a).

Counsel's search in [***Deer Park***] which [the ***Deer Park***] Court deemed insufficient, included local 'deed books, tax records, will books, and a voter registration list.' ***Deer Park****,* 559 A.2d at 945. That search, though defective, was more thorough than the one documented in counsel's affidavit. In particular, we note that the ***Deer Park*** search included will books. Instantly, as explained by [the defendants], a search of will books in the Susquehanna County Register of Wills office would have revealed the will of E.J. Stanley, devising real property to his son Joseph M. Stanley. E.J. Stanley's will also identifies **twelve siblings** of Joseph M. Stanley, each of whom received a devise of real property or a bequest of money. The last surviving sibling has come forward to challenge [the plaintiffs'] quiet title action. Here, as in ***Deer Park****,* a very simple and minimal investigation would have revealed to [the plaintiffs] the identity of potentially interested parties.

*Id.* at 272-73.

Finally, in a footnote, the Court commented that "no discovery, evidentiary hearing or fact finding was necessary" to determine whether the affidavit satisfied Rule 430(a), because the affidavit was "facially deficient." *Id*. at 271 n. 6.

We have quoted **Sisson** at length to drive home the fact that counsel's investigation in **Sisson** was more extensive than NF's counsel's investigation in the present case. Because **Sisson** held that counsel's affidavit was "facially deficient", logic dictates that NF's counsel's affidavit is facially deficient as well.[11, 12] NF's counsel's affidavit did not merely contain

_____

[11] On August 25, 2015, our Supreme Court granted *allocatur* in **Sisson** on a single issue:

> Whether the Superior Court erred when it affirmed the trial court's decision granting the rule to show cause, opening the judgment, and granting judgment on the pleadings, where the trial court conducted its own investigation of public records and decided disputed issues of material fact without evidence in the certified record to support those decisions.

**Sisson v. Stanley**, 141 MAL 2015 (Pa., 8/25/15). Despite this order, this Court's decision in **Sisson** continues to remain good law. **See Marks v. Nationwide Ins. Co.,** 762 A.2d 1098, 1101 (Pa.Super.2000) (decision of Superior Court remains precedential until it has been overturned by Supreme Court). Moreover, the issue on which the Supreme Court granted *allocatur* has no bearing on the present case, for in this case, the trial court did not "conduct[] its own investigation of public records" or "decide[] disputed issues of material fact" in the course of striking NF's judgment. The trial court simply found, quite correctly, that NF's counsel's Rule 430(a) affidavit was deficient on its face.

[12] One technical difference between **Sisson** and this case bears mention. In **Sisson**, the trial court opened judgment, whereas the trial court in this case
*(Footnote Continued Next Page)*

- 23 -

"technical" defects, as NF would have us conclude.[13]   The affidavit was an abject failure to comply with the rules of service and to provide interested parties with adequate notice of NF's quiet title action.   Therefore, the trial court properly struck NF's judgment.

NF and Ultra maintain that the trial court's order was erroneous based on *Myers v. Mooney Aircraft, Inc.*, 240 A.2d 505 (Pa.1967).   We find *Myers* distinguishable.   The defendant corporation in *Myers* moved to strike the judgment on the ground that the plaintiff did not serve the defendant in compliance with rules governing service on corporations, because the person whom the plaintiff served with process was only an independent contractor and not an agent of the corporation, and the location of service was the independent contractor's own office but not the defendant's office.   The Supreme Court held that a motion to strike the judgment was not a proper

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

struck the judgment.   This distinction is immaterial.   The reason why the trial court did not strike the judgment in *Sisson* was because the defendants merely asked that the court open the judgment.   Had the defendants in *Sisson* asked the court to strike the judgment, it might well have done so due to the facial deficiencies in the affidavit.   In this case, the defendants *did* request that judgment be stricken, and for the reasons given above, the trial court properly struck the judgment.

[13] For an example of one such technicality, *see City of Philadelphia Water Revenue Bureau v. Towanda Properties, Inc.*, 976 A.2d 1244 (Pa.Cmwlth.2009). There, the attorney described his good faith investigation under Rule 430 in a verified motion for alternative service instead of in an affidavit attached to the motion.   The Commonwealth Court held that placement of the attorney's summary in a motion instead of in an affidavit was a mere defect in form that did not amount to failure to conduct a good faith investigation.   *Id*. at 1249.

vehicle for relief, because the alleged errors in service were not evident on the face of the record but could only be supported with facts outside the record. Through this decision, **Myers** appeared to suggest that the defendant could only seek relief in a petition to open judgment, not a petition to strike. In this case, two fatal defects were evident on the face of the record: NF's failure to join indispensable parties and its failure to effectuate proper service of process. Therefore, in contrast to **Myers**, a motion to strike was the appropriate remedy.

NF and Ultra argue at great length that "equitable considerations" preclude striking the 1989 judgment – i.e., in the past quarter century, so many people have transacted business in reliance on the 1989 judgment that it would be unjust to strike the judgment now, notwithstanding any defect in the record in 1989. The defendants could have attacked the judgment years earlier, NF proclaims, so it is unfair for them to attack it now. In support of this theory, NF cites Judge Spaeth's concurrence in **Tice v. Nationwide Ins. Co.**, 425 A.2d 782, 787-92 (Pa.Super.1981), multiple decisions from other jurisdictions, and the Restatement (Second) of Judgments § 75, all of which posit that a court may properly deny relief from a void judgment when (1) the petitioner has tarried too long before moving for relief, (2) the judgment winner might suffer prejudice, and (3) innocent third parties deserve protection for relying on the judgment. This argument misses the mark. Unlike fine wine, void judgments in Pennsylvania do not

improve with age; void *ab initio*, void for all time. ***Romberger v. Romberger,*** 139 A. 159, 160 (Pa.1927) (a void judgment is a "mere blur on the record, and which it is the duty of the court of its own motion to strike off, whenever its attention is called to it"); ***Clarion, M. & P. R. Co. v. Hamilton,*** 17 A. 752 (Pa.1889) ( "a void judgment is no judgment at all"); ***Oswald v. WB Public Square Associates***, 80 A.3d 790, 797 (Pa.Super.2013) (judgment that is void *ab initio* must be stricken without regard to passage of time).

IV.

Having determined that the trial court's order striking the 1989 judgment was proper, we turn to the final two questions in NF's brief along with the final question in Ultra's brief, because they all concern the same subject: whether the trial court properly sustained the defendants' preliminary objections to the amended complaint and dismissed the amended complaint for failure to state a cause of action.

The applicable scope and standard of review is as follows:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the

averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-09 (Pa.Super.2012) (citations omitted).

Count I of NF's amended complaint is an action for adverse possession of all subsurface rights by adverse possession. One who claims title by adverse possession

must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years...However, under certain circumstances, the periods of possession of prior owners may be added on to the period of possession of the present owners [by] a process, called 'tacking'... but only where there is privity between [successive occupants]. For our purposes, 'privity' refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law.

*Baylor v. Soska*, 658 A.2d 743, 744-45 (Pa.1995). In *Baylor*, the Baylors claimed that they held the disputed land via adverse possession by tacking the period that their predecessor in title held the disputed land. The Supreme Court held that the Baylors could not tack the period of time in

which their predecessor in title held the disputed land, because the predecessor failed to identify the disputed land in her deed to the Baylors:

> The only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed. In this case, the predecessor in title did not meet this requirement so far as regards the disputed tract.

*Id*. at 746.

NF's claim of adverse possession in Count I is defective for the same reason as the Baylors' claim of adverse possession in **Baylor**. The 1987 deed to NF does not purport to convey subsurface rights or any adverse possession of subsurface rights. Nor does the amended complaint allege any facts which show that NF's predecessor in interest intended to convey any adverse possession interest in subsurface rights. As a result, NF's claim of adverse possession fails as a matter of law.

Count II of the amended complaint contends that adverse possession arises from the stricken 1989 judgment. The trial court correctly rejected this argument. First, as one Pennsylvania federal court recently held, a judgment does not satisfy the adverse possession elements of visible and notorious possession. **Hoffman v. Arcelormittal Pristine Resources**, 2011 WL 1791709 (W.D.Pa.2011).[14]

_____

[14] Although we are not bound by the holdings of federal district courts, we may utilize the reasoning in these decisions to the extent we find them
*(Footnote Continued Next Page)*

In **Hoffman**, the plaintiff/grantee's deed contained an exception giving the grantor oil and gas subsurface rights. Nevertheless, the plaintiff leased subsurface rights to various persons in 1971, 1981 and 2006. She claimed that by virtue of leasing the subsurface rights and recording the leases, she exercised adverse possession over the subsurface. The court disagreed:

> [In] **Thomas v. Oviatt**, 5 Pa. D & C 4th 83, 83 (C.C.P. Warren Cty.1989) … the Court of Common Pleas of Warren County summarily rejected the exact same argument advanced by plaintiff herein, that is: by leasing the mineral rights on three separate occasions beginning in 1971 and recording the leases openly in the Washington County Recorder of Deeds, she now maintains title to the mineral rights through the law of adverse possession. The Court stated:
>
>> Plaintiffs' contention, that plaintiffs' intention to hold the subsurface for themselves, was manifested by the granting of the aforesaid three leases is woefully lacking in that one may not lose title to realty simply by one claiming a right thereto. If this were so, no estate would be free from attack and acquisition. Plaintiffs argue defendants could have, with due diligence, checked the indexes at the courthouse periodically to determine if there was any activity affecting their oil, gas and minerals. A property owner does not have to daily visit the Recorder's Office to ascertain if one is making a claim for his property.
>
> **Id**. at 85.
>
> As defendants have emphasized, other state courts that have considered this issue have held the same—in order achieve title to oil and natural gas by adverse possession, actual possession, meaning drilling and production, of the minerals must occur. **See e.g. Natural Gas Pipeline Co. of America v. Pool**, 124 S.W.3d 188 (Tex.2003); **Schaneman v. Wright**, 470 N.W. 566,

*(Footnote Continued)* ————————

persuasive. **Stephens v. Paris Cleaners, Inc.**, 885 A.2d 59, 68 (Pa.Super.2005).

577 (Neb.1991) (mere execution, delivery or recording of oil and gas lease or mineral deeds will not constitute adverse possession); *Piney Oil & Gas Co. v. Scott*, 258 Ky. 51, 79 S.W.2d 394, 401 (Ky.1934) (adverse occupation and use of property 'cannot be wrought in the office of the county clerk no matter how many deeds or leases the would-be disseisor may record there.') *Lyles v. Dodge*, 228 S.W. 316, 317 (Tex.Civ.App.1921) (registration of oil lease, even if they had been recorded for a sufficient length of time to meet the requirements of the statute, would not constitute notice of adverse possession of the minerals.)

In this case, judging the facts in the light most favorable to plaintiff, there is not even an allegation that plaintiff or her alleged 'leaseholders' drilled or attempted to drill on the property at any point since the date she bought and first leased the property. On the contrary, the material facts as set forth by plaintiff demonstrates that she has merely leased this property and there has not, to date, been any further cultivation of the subject property. Therefore, plaintiff fails to meet the first element required under the law of adverse possession: that there be *actual* possession on some part of the land at issue. Without belaboring the point, since there has never been *any* drilling on the property, it necessarily follows then, that plaintiff has failed to demonstrate other crucial elements of the law of adverse possession—that the possession was visible and notorious. *Stark v. Pennsylvania Coal Co.,* [], 88 A. 770 (Pa.1913). The Court will not continue to address the remaining elements of adverse possession because *each* of these elements must be satisfied in order to acquire title through the law of adverse possession. [*Recreation Land Corporation v.*] *Hartzfeld*, 947 A.2d [771,] 774 [(Pa.Super.2008)].

*Id.*, 2011 WL at 1791709, *6-7. We concur with *Hoffman's* determination

that merely recording a judgment does not support a claim for adverse

possession.

Anadarko and the Proctor Heirs point out, and we agree, that Count II

fails for a second reason -- a void judgment, such as the 1989 judgment

herein, is a legal nullity that has no force and effect. *First Seneca Bank v.*

***Greenville Distributing Company***, 533 A.2d 157, 162 (Pa.Super.1987) ("a void judgment is not entitled to the respect accorded to, and is attended by none of the consequences of, a valid adjudication. Indeed, a void judgment need not be recognized by anyone, but may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. It has no legal or binding force or efficacy for any purpose or at any place. It cannot affect, impair, or create rights, nor can any rights be based thereon"). Under this broad precept, NF cannot exploit the void 1989 judgment for any purpose, including acquisition of title by adverse possession.

Count III of the amended complaint is an action for declaratory judgment that NF owns the subsurface right under the Property. Because the trial court properly dismissed Counts I and II, NF's request in Count III to declare its rights on the basis of Counts I and II necessarily fails as well.

V.

Based on the foregoing reasons, we affirm the trial court's order dismissing NF's amended complaint against all defendants.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/4/2015</u>