J-A14025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SALLY FREED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT E. GUILDAY AND LICIA E. GUILDAY, HIS WIFE | |
| Appellants | |
| ROBERT E. GUILDAY AND LICIA E. GUILDAY, HIS WIFE | |
| Appellants | |
| v. | |
| SALLY FREED AND HENDRICK B. WRIGHT, HIS HEIRS, DEVISEES, LEGATEES, EXECUTORS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, SUCCESSORS, TRANSFEREES, ASSIGNS AND ALL OTHER PERSONS HAVING INTEREST IN THE PREMISES | |
| Appellees | No. 1523 MDA 2021 |

Appeal from the Judgment Entered March 17, 2022
In the Court of Common Pleas of Luzerne County
Civil Division at No.: 2015-11871; 2020-04203

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:           **FILED: OCTOBER 20, 2022**

Appellants Robert E. Guilday and Licia E. Guilday, husband and wife,

appeal from the March 17, 2022 judgment entered in the Court of Common

Pleas of Luzerne County ("trial court") against them and in favor of Appellee

_____

[*] Former Justice specially assigned to the Superior Court.

Sally Freed ("Ms. Freed") following the denial of their post-trial motions. Upon review, we affirm.

The facts and procedural history of this case are undisputed.[1] Briefly, on September 12, 1990, Ms. Freed acquired the premises located at 2927 Lakeside Drive, Harveys Lake, Luzerne County and associated lakefront property. On October 5, 2004, Ms. Freed purchased a second property when she acquired from the Greater Wilkes-Barre Association for the Blind (the "Blind Association"), via a quitclaim deed, the Blind Association's 1/5 interest in a portion of the lakebed of Harveys Lake adjacent to her property.[2] Ms. Freed duly recorded this sale with the Luzerne County Recorder of Deeds in Deed Book 3004, Page 251816.

On April 21, 2005, Appellants acquired from Kevin J. McHale ("Mr. McHale") a property, featuring a dock, adjacent to Ms. Freed's property in Harveys Lake. The properties shared a common boundary. Mr. McHale had purchased the property from David Bailey, III and Ann Marie Bailey (the "Baileys") on May 21, 1998, who in turn had obtained the same from Leonard Chesterfield and Mary Mohanco, n/k/a Mary Chesterfield on July 6, 1990. At

---

[1] Unless otherwise stated, the facts are taken from the trial court's July 8, 2021 and November 1, 2021 opinions.

[2] The October 5, 2005 quitclaim deed noted that the lakebed property was owned by Hendrick B. Wright, who died on September 2, 1881. Upon his death, Henrick Wright devised the lakebed property to his five children, one of whom was George B. Wright. When George Wright died on October 1, 1932, he conveyed his 1/5 interest in the lakebed to the Greater Wilkes-Barre Association for the Blind.

the time of the April 14 sale, neither the deed from Mr. McHale to Appellants, nor the deed from the Baileys to Mr. Hale described the portion of the lakebed where the dock was located.

On October 21, 2015, Ms. Freed initiated an ejectment action, docketed at 2015-11871 against Appellants (the "Ejectment Action"), alleging that, since acquiring the property, Appellants have maintained a wooden dock across the common boundary line that encroached upon her property. On April 25, 2016, Appellants filed an answer, denying the averments of the complaint and asserting new matter. In particular, Appellants claimed, *inter alia*, a prescriptive easement and adverse possession to justify their continued use of the dock. Appellants also brought counterclaims seeking to quiet title and a declaratory judgment that they have a prescriptive easement over that portion of the lakebed property on which their dock is situated. Appellants' Answer, 4/25/16, at ¶¶ 28-37. On May 13, 2016, Ms. Freed replied to Appellants' new matter and answered the counterclaims.

While the Ejectment Action was pending, on March 18, 2020, Appellants instituted a quiet title action against Ms. Freed and Hendrick B. Wright, his heirs, devisees, legatees, executors, administrators, personal representatives, successors, transferees, assigns and all other persons having interest in the premises (the "Wright Defendants") at docket 04203-2020 ("Quiet Title Action"). Appellants claimed that, even though a part of their dock encroached upon Ms. Freed's lakebed property, they have a right to continue to use the dock via the doctrine of adverse possession. In support, Appellants claimed

that they and their predecessors in interest—Mr. McHale and the Baileys— used the dock continuously for over twenty-one years as of the date of the complaint. Appellants' Complaint, 3/18/20, at ¶¶ 9-11.

On April 29, 2020, Ms. Freed filed an answer, generally denying the averments of the complaint and asserting new matter. On September 28, 2020, Ms. Freed amended her answer, raising new matter and asserting a crossclaim for quiet title, based on adverse possession, against the Wright Defendants. On January 27, 2021, following her unsuccessful attempts to serve the Wright Defendants via publication, the trial court quieted title in favor of Ms. Freed relating to the lakebed property that she purchased from the Greater Wilkes-Barre Association for the Blind.[3]

On August 15, 2020, Appellants obtained from Mr. McHale a quitclaim deed, whereby Mr. McHale transferred to them all rights obtained through his open, hostile, continuous, notorious and exclusive use of dock encroaching upon a portion of Ms. Freed's lakebed property from May 21, 1998 until April 21, 2005. On December 15, 2020, Appellants obtained a nearly identical quitclaim deed from the Baileys spanning the Baileys periods of possession.

On March 25, 2021, following the parties' stipulation, the trial court consolidated for purposes of trial the Ejectment Action and the Quiet Title

_____

[3] Similarly, on March 26, 2021, the trial court also entered judgment in favor of Appellants and against the Wright Defendants. We express no opinion on the validity of the judgments entered against the Wright Defendants. As the Wright Defendants did not participate below, they also are not a party to this appeal.

- 4 -

Action. That day, this case proceeded to a bench trial, following which the trial court denied relief to Appellants and concluded that their dock encroached on the lakebed property owned by Ms. Freed.

On July 19, 2021, Appellants filed a post-trial motion, challenging principally the trial court's refusal to rely upon the post-dated quitclaim deeds from Mr. McHale and the Baileys to allow tacking for purposes of establishing adverse possession. The trial court denied the post-trial motion on November 1, 2021. Appellants timely appealed. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellants complied, asserting that the trial court erred in concluding that they failed to establish tacking for purposes of proving adverse possession. Separately, Appellants asserted that the trial court erred in quieting title to the lakebed property in favor of Ms. Freed because she failed to prove adverse possession vis-à-vis the Wright Defendants.

On appeal,[4] Appellants raise two issues for our review, reproduced verbatim as follows:

---

[4] We note that Appellants' brief fails to comply with the briefing requirements outlined in the Pennsylvania Rules of Appellate Procedure. Specifically, the brief includes no citations to the record or to legal authority to support Appellants' claims. *See* Pa.R.A.P. 2119 (setting forth argument briefing requirements, including "discussion and citation of authorities" and "reference to the place in the record where the matter refers to appears"). The brief also presents no meaningful legal analysis. Yet, despite these obvious and substantial briefing deficiencies, we decline to find waiver and address the merits of this appeal.

[I.] Does the filing of quitclaim deeds transferring use of the real estate after the filing of the quiet title action, but referring to use prior thereto, fulfill the requirements of tacking?

[II.] Did the trial court err in finding that Appellant[s] had no standing because they were only adjoining owners and ignoring their encroachment upon [Ms. Freed's] claim.

Appellants' Brief at 1.

At the core, Appellants take exception to the trial court's determination that they did not establish adverse possession of the disputed lakebed property upon which their dock encroached. They argue that the trial court erred in concluding that they could not tack the periods of possession of prior owners onto their own period of possession because no deed in the chain of title at the time of the 2005 conveyance from Mr. McHale to Appellants described or referenced the disputed the lakebed property.

Following a bench trial concerning adverse possession, the trial court's "findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings." *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000). "We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law." *Wyatt Inc. v. Citizens Bank of Pa.*, 976 A.2d 557, 564 (Pa. Super. 2009) (citation omitted). Where, as here, the appellants claim legal error in the application of the doctrine of adverse possession, they raise "a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *City of Philadelphia v. Galdo*, 217 A.3d 811, 817 (Pa. 2019).

"Adverse possession is an extraordinary doctrine that permits one to achieve ownership of another's real property by operation of law." *Id.* at 820. "The doctrine is dependent upon an individual's possession of another's property for an enumerated period of time authorized by statute." *Id.*; *see also* 68 P.S.A. §§ 81-88 (governing claims by adverse possession); and 42 Pa.C.S.A. § 5530 (setting forth a twenty-one-year-limitations period in actions for the possession of real property). Through these statutes, the General Assembly "encourages those who diligently develop and improve the land as against those who are content to hold the bare legal title inactively for many years." *Galdo*, 217 A.3d at 820.

> Thus, in Pennsylvania, one who claims title by adverse possession
>
> must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. . . . However, under certain circumstances, the periods of possession of prior owners may be added on to the period of possession of the present owners [by] a process, called "tacking" . . . but only where there is privity between [successive occupants]. For [the Court's] purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law.

*Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 35 (Pa. Super. 2015) (quoting *Baylor v. Soska*, 658 A.2d 743, 744-45 (Pa. 1995)), *appeal denied* 158 A.3d 1237 (Pa. 2016).

In *Baylor*, Robert and Lillian Baylor ("the Baylors") claimed that they held the disputed land, via adverse possession, by tacking the period that their predecessor in title held the disputed land. *Baylor*, 658 A.2d at 743. The

Supreme Court held that the Baylors could not tack the period of time in which their predecessor in title held the disputed land, because the predecessor failed to identify the disputed land in her deed to the Baylors.

> The only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance[,] by means minimally acceptable for conveyancing of realty[,] that which is intended to be conveyed. In this case, the predecessor in title did not meet this requirement so far as regards the disputed tract.

*Id.* at 746.  The Supreme Court reasoned:

> [t]here is good reason for this requirement.  Interested parties have a right to discern from the record the state of the title of any parcel of land.  If tacking were to be permitted because of vague, undefined "circumstances," there could and most likely would be no way for one not a party to the conveyance to know this.  But the law mandates that a person asserting a claim of adverse possession make this assertion openly and notoriously to all the world.  There must be no secret that the adverse possessor is asserting a claim to the land in question.  If the adverse possessor's claim is to be passed on to a successor in title, therefore, there must be some objective indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title.

*Id.* at 745–46 (citation omitted).  Thus, in order to tack the time in possession of one's predecessors for purposes of acquiring title to land, the subsequent possessor must receive a deed describing the metes and bounds of the land in question.  The "acceptance of a deed describing boundary lines confines the premises conveyed to the area within the boundaries, and such a deed ***does not convey*** inchoate rights acquired by incomplete adverse possession.  Each predecessor must have claimed title to the property in dispute and have

- 8 -

purported to include it." ***Watkins v. Watkins***, 775 A.2d 841, 846–47 (Pa. Super. 2001) (citations omitted) (emphasis added).

The issue here is straightforward: whether Appellants established adverse possession of the portion of the lakebed property upon which their dock encroached. Our review of the record discloses that at the time Appellants purchased their property, no deed in Appellants' chain of title "describe[d] in the instrument of conveyance[,] by means minimally acceptable for conveyancing the realty[,] that which [was] intended to be conveyed[,]" *i.e.*, the portion of Ms. Freed's lakebed property upon which Appellant's dock encroached. ***See Baylor***, 658 A.2d at 746; ***accord Zeglin v. Gahagen***, 812 A.2d 558, 565 (Pa. 2002) (recognizing that in ***Baylor***, the Supreme Court "dismissed the portion of the privity rules permitting the tacking based on acts or circumstances extrinsic to written deeds.").

As discussed, a portion of Appellants' dock encroached on Ms. Freed's lakebed property. Appellants' 2020 complaint alleged that they acquired title to that portion of Ms. Freed's property via adverse possession. Appellants, however, did not own their property for twenty-one years, as they purchased it in 2005. Thus, to circumvent this limitation, they sought to add the periods of possession of prior owners—Mr. McHale and the Baileys—onto their period of possession. Recognizing that their 2005 deed did not describe or reference the disputed lakebed property, Appellants obtained and recorded in 2020 post-dated quitclaim deeds from Mr. McHale and the Baileys describing the

lakebed property.[5] The trial court found the post-dated quitclaim deeds were ineffective, because they sought to include that which was absent in the original deeds at the time of conveyance. The court explained that for Appellants to "successfully tack their period of possession onto the prior owners, the deed received when they bought the property from [Mr.] McHale in April 2005 would have had to contain a description of the portion of the lakebed at issue. It did not and in this case it is fatal." Trial Court Opinion, 11/1/21, at 14. This fatal defect in the chain of title was not cured when Appellants obtained the 2020 quitclaim deeds. As the trial court noted, they obtained the quitclaim deed from the Baileys **after** they obtained the quitclaim deed from Mr. McHale. Critically, the Baileys issued a quitclaim deed directly to Appellants, rather than to Mr. McHale. Thus, the 2020 quitclaim deeds did not follow the chain of title. Thus, without tacking, Appellants cannot establish privity between themselves and their predecessors in title to satisfy the twenty-one-year period of possession necessary to show title through adverse possession. **See Northern Forests II, Inc.**, 130 A.3d at 35. Accordingly, Appellants' quiet title action must fail.[6]

---

[5] This occurred at least five months after the initiation of the Quiet Title Action and nearly five years after the Ejectment Action.

[6] Insofar Appellants relies upon **Freed v. Harveys Lake Borough Zoning Hearing Bd.**, 2008 WL 9398599 (Pa. Cmwlth. 2008) (unpublished memorandum), for the argument that it settled or affected ownership of lakebed properties, the reliance is misplaced. The Commonwealth Court decision is inapplicable *sub judice* because it involved an interpretation of a local ordinance and did not settle deed or title disputes.

We next turn to Appellants' second argument that the trial court erred in concluding that they lacked standing to challenge Ms. Freed's adverse possession claim against the Wright Defendants. We perceive this argument to be irrelevant and without merit. The trial court did **not** decide whether Ms. Freed established adverse possession via-a-vis the Wright Defendants. Indeed, the trial court explained, "[n]owhere in this court's findings of fact and conclusions of law does this court suggest that [Ms. Freed] established twenty-one years of adverse use." Trial Court Opinion, 11/1/21, at 18 (unnecessary capitalizations omitted). The trial court merely determined that Appellants failed to quiet title in the lakebed property because they could not prove adverse possession via tacking. The court observed:

> [Appellants] were aware of the quitclaim deed from the Blind Association and did not object at the time of trial. It is true that the quitclaim deed from the Blind Association to [Ms.] Freed conveyed a one-fifth interest in the portion of the lakebed specifically described in the deed; this interest is more than [Appellants] have in the portion of the property where their dock is located which encroaches on [Ms.] Freed's property. The one-fifth interest could possibly create problems down the road for [Ms. Freed] if someone with more than one-fifth interest files a suit in ejectment against [her] but that is for another day.

*Id.* at 16-17 (footnote omitted). Finally, as noted earlier, prior to trial, Ms. Freed—via default—quieted title against the Wright Defendants. Accordingly, Appellants are not entitled to relief.

In sum, we cannot conclude that the trial court erred in denying Appellants' quiet title claim. Even though they possessed the dock encroaching upon Ms. Freed's property since 2005, they fell short of the

- 11 -

required twenty-one-year period necessary to establish adverse possession. Appellants also could not overcome the time limitation because there was no reference to the disputed portion of the lakebed property in any deed in the chain of title, much less the deed conveying the property to Appellants in 2005. Their subsequent efforts to obtain post-dated quitclaim deeds were futile. As a result, Appellants failed to establish privity between themselves and their predecessors in title for purposes of establishing adverse possession by tacking. We therefore affirm the trial court's March 17, 2022 judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2022